61   315
176s 210

## Siegel, Cooper & Company v. John A. Colby et al.

1. CONSTRUCTION OF CONTRACTS—*Where the Meaning is Clear.*— Where the meaning of an instrument is clear, there is no room for construction.

2. SAME—*Where a Patent Ambiguity Appears.*—Where a patent ambiguity appears, yet, if the entire instrument is such that the intent of

the parties can be ascertained therefrom, a court of law will construe and enforce such ambiguous document.

3. Same—*Where the Parties Have Acted.*—Where both parties have acted upon a particular construction of an ambiguous document, that construction, if in itself admissible, will be adopted by the court. To this extent its original effect, though it can not be altered, may be explained by the conduct of the parties.

4. Estoppel—*Not by an Unsworn Answer in Chancery.*—A person is not estopped by his unsworn answer, in a suit in chancery, signed by counsel. It is but a mere pleading concluding no one.

5. Same—*Admissions.*—Admissions, where acted upon by others, are conclusive against the party making them, in all cases between him and the party whose conduct he has thus influenced.

Assumpsit, for rent. Appeal from the Circuit Court of Cook County; the Hon. Francis Adams, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed December 12, 1895.

A. Binswanger, attorney for appellant.

Wilson, Moore & McIlvaine, attorneys for appellees.

Mr. Justice Waterman delivered the opinion of the Court.

This is a suit brought by Siegel, Cooper & Co., in the name of H. A. Kohn, against John A. Colby & Sons to recover under a lease, rent for the month of January, 1891.

The lease in question was entered into by H. A. Kohn as lessor, and John A. Colby & Sons as lessees, on August 7, 1885, and recited that it should run from the 1st day of January, A. D. 1886, to the 31st day of December, A. D. 1889, for a rental of $36,000, payable in equal monthly installments of $1,000 each. (It will be noticed that the term from January 1, 1886, to December 31, 1889, covers a period of four years, while the provision for $36,000 rental, payable in equal monthly installments of $1,000 each, seems to indicate that a period of three years was intended instead of four.)

The lease also contains a provision that the lessees should have the privilege of renting said premises for a period of two years from the 1st day of January, 1889, for a rental of $24,000, payable in equal monthly installments of $1,000

each, upon giving notice of such intention to the lessor twelve months prior to the expiration of the lease. (This provision that the premises might be rented for a period of two years from January 1, 1889, by giving twelve months' notice before the expiration of the lease, when, according to its terms, it does not expire until December 31, 1889, would also indicate that the parties intended to make a lease for only three years.)

The lease also contains a supplemental agreement that in case the lessor should erect a passenger elevator and make certain other improvements in the building, the lessees would pay an additional rental of $16.66 per month, and in accordance with this agreement the improvements were made, thereby making the rental $1,016.66 per month.

Within the time required by the lease and more than two years prior to December 31, 1889, the time recited on the face of the lease as the date of its expiration, the lessees gave notice to the lessor that they would lease the premises for a further period of two years in accordance with the provisions of the lease.

Thereafter, on the 29th day of December, 1887, an extension of said lease was made in the following language:

" It is hereby mutually agreed by the parties to this lease that the same be and is extended for the period of two years from December 31, 1889, as provided in and according to the terms and conditions of said lease, for the same rental therein mentioned, and the additional rent of $200 per annum as provided in the subsequent agreement, which, or a copy of which, marked " A, " is attached to said lease, the monthly rental for said extended period being $1,016.66 for each and every month. Dated December 29, 1887.

H. A. KOHN,        [L. S.]
J. A. COLBY,       [L. S.]
HENRY C. COLBY,    [L. S.]
EDWARD A. COLBY.   [L. S.] "

(It will be noticed that this extension runs from the 31st day of December, 1889, covering a period of two years from that date, which coincides with the date at which the orig-

inal lease was to expire, thus indicating that, at the time of making the extension, at least, the parties intended that the original lease should run for a period of four years.)

With the lease in this uncertain and, apparently, contradictory condition, the parties continued acting under it until the 31st day of December, 1889, the time when the extension of two years took effect, at which time H. A. Kohn, the lessor, assigned his interest in said lease to Henry Siegel, Frank H. Cooper and Isaac Keim.

On April 1, 1890, Henry Siegel, Frank H. Cooper and Isaac Keim, as Siegel, Cooper & Co., assigned their interest in said lease to Siegel, Cooper & Co., a corporation, the party by whom the present action was brought. Thereafter a suit in chancery was begun against John A. Colby & Sons by Siegel, Cooper & Co., in the name of H. A. Kohn, and to its use, and made returnable to the May term, 1890, of the Circuit Court of Cook County, in which suit appellants alleged that a mistake was made in drawing the lease, and also in the draft of the extension thereof, and asked that the lease be reformed and that it be decreed by the court to expire December 31, 1890. To this bill Colby & Sons, appellees, filed their answer, in which they admitted that the mistake as set forth in the bill, was made in drawing the lease, and that it was intended by the parties thereto that it should cover a period of three years instead of four, and that the words " December 31, 1889," the time for the expiration of the lease, should have been " January 1, 1889," but they alleged that, at the time of making the extension, it was understood between themselves and Mr. Kohn that this lease should be considered a four year lease, by virtue of the notice for extension, thus following the date inserted by mistake instead of that intended at the time of making the lease, and that in accordance with this understanding the renewal was made to run from the 31st day of December, 1889, for a period of two years, and that thus both parties ratified the mistake of the original lease, and agreed that the extended lease should run a year longer than the original lease provided; that the renewal was made with the dis-

tinctly avowed purpose of having the lease extended for a period of two years from December 31, 1889.

On November 19, 1890, and after the answer of Colby & Sons had been filed, complainant dismissed its chancery suit.

On November 24, 1890, and after said bill in chancery had been dismissed by complainant, Colby & Sons gave notice to H. A. Kohn and Siegel, Cooper & Co., that they would surrender up possession of said premises on December 31, 1890, less than two months after the date of the notice and one year before the time claimed in their answer at which the lease should expire.

On the day following the receipt of the notice of surrender, Siegel, Cooper & Co., wrote Colby & Sons, calling their attention to the various contentions concerning said lease above set forth, and that their surrender would not be accepted; that had it not been for their contention that the lease did not expire until December 31, 1891, and their refusal to surrender before that time, the premises could have been let for almost double the amount they were paying, but at that late date tenants could not be found for such extensive premises.

Thereafter, on December 31, 1890, J. A. Colby & Sons sent the keys to Siegel, Cooper & Co., and vacated the premises.  On the same day Siegel, Cooper & Co., sent a receipt to Colby & Sons for the keys, in which receipt it is stated that the keys were accepted by Siegel, Cooper & Co., as the agent for Colby & Sons to care for the premises and rent them, if possible, on their behalf, and to account to them for the proceeds from that time till December 31, 1891. After this receipt reached Colby & Sons, they notified Siegel, Cooper & Co., that they did not authorize such agency, and returned the receipt.

This suit was instituted, summons being made returnable to the February term, 1891, of the Circuit Court of Cook County, to recover rent for the month of January, 1891, and a declaration was filed, setting up the above facts. Various special pleas were filed to the declaration, but were after-

ward withdrawn and the general issue filed. The cause was tried by the court without a jury.

Before the case was reached for trial, H. A. Kohn died, and the beneficial plaintiff was made actual plaintiff by agreement of counsel.

Upon a hearing of the cause the court found the issues for the defendants and entered judgment against plaintiff for costs of suit and that the defendants be discharged. Whereupon, after entering its exceptions, plaintiff prayed an appeal and brought the case to this court.

The lease made between appellees and H. A. Kohn was ambiguous, containing provisions repugnant to each other. It is urged that the extension of this lease, also made between Kohn and appellees, was likewise ambiguous, but that the uncertainty of each of these instruments can be removed and the uncertainty dispelled by an examination of the contracts themselves.

Where the meaning of an instrument is clear, there is no room for construction. Bishop on Contracts, Sec. 380.

There is an obvious need for a construction of these instruments; and as the intent of the parties is the thing to be arrived at, and the court, to do this, may place itself in the shoes of the parties, it is obvious that these documents presented a case in which, what would be finally determined to have been the intent of the parties to them, was uncertain.

Where a patent ambiguity appears, yet, if the entire instrument is such that the intent of the parties can be ascertained therefrom, a court of law will construe and enforce such ambiguous document. Mercantile Ins. Co. v. Janes et al., 87 Ill. 189; C., B. & Q. Ry. Co. v. Bartlett et al., 120 Ill. 603; Holmes v. Parker, 25 Ill. App. 225–228.

A careful consideration of the lease and the renewal thereof, only seems to render it certain that the intent of H. A. Kohn and appellees was to make a lease expiring December 31, 1888, and, consequently, that the renewal for two years was only to December 31, 1890.

Conceding this to be the case, nevertheless there is pre-

sented by these patently ambiguous instruments, a case for construction, and consequently the conduct of the parties claiming under these documents is to be taken into consideration. Such conduct, which is important, is of one of the parties to this litigation, who are, only on one part, the parties by whom these contracts were made.

Appellees having succeeded to the rights of H. A. Kohn, and the patent ambiguity of these instruments being known to them, they filed a bill alleging that a mistake had been made in this lease, and the extension thereof; that the lease, as written, did not expire until December 31, 1889, and the extension, as written, was to the 31st day of December, 1891; whereas, the intention of the parties to said instruments was to make a lease expiring December 31, 1888, and to extend the same only until December 31, 1890; and prayed that the instruments be reformed to comply with such intention. Appellant answered this bill, admitting the mistake in the original lease, but denied that there was any mistake in the extension, alleging that it was the express and dist'nctly avowed purpose of the parties to the extension, H. A. Kohn and appellees, to extend the lease for the period of two years from December 31, 1889. Whereupon appellant's said bill was, upon its motion, dismissed, it making no further effort to reform the contract or to obtain possession of the premises.

It is urged by appellant that appellees are estopped by their answer in that case, to which it is replied that the answer was signed by counsel, and being unsworn, was but a mere pleading, concluding no one. That an unsworn answer is a mere pleading, and feeble evidence in another suit, is well settled. 1 Greenleaf on Ev., Sec. 212.

It is, however, a rule, that where both parties have acted upon a particular construction of an ambiguous document, that construction, if in itself admissible, will be adopted by the court. To this extent its original effect, though it can not be altered, may be explained by the conduct of the parties. Pollock's Principles of Contracts, 392, 1st Am. from 2d Eng. Ed.

"Tell me," said Lord Chancellor Sugden, "what you have done under a deed, and I will tell you what the deed means." Atty. Gen'l v. Drummond, 1 Dr. & W. 353, 366, affirmed; Drummond v. Atty. Gen'l, 2 H. of L. Cases, 387.

The acts and declarations of parties, constituting their mode of doing business, is strong evidence of the meaning they assigned to contracts made by them. Jackson v. Perrine, 35 N. J. L. 137–142; Coleman v. Grubb, 23 Pa. St. 393–409; Chicago v. Sheldon, 9 Wall. 50–54; Stone v. Clark, 1 Met. 378; Wharton on Contracts, Sec. 653.

Even if the construction now put by appellees upon the contract be the correct one, the question arises whether the contract has not been varied by mutual consent, as evidenced by the position taken, the claim made by appellees of appellant, and the submission thereto by appellant, appellees being then in possession of the premises.

If appellees are bound by the position taken, and the proceedings had in the chancery suit, it is not because of a mere admission or statement in a pleading, but rather because the deliberate and important position by them taken was acceded to and acted upon by appellant, who conceded to appellees the rights they then claimed.

It is insisted by appellant that it is not merely as a matter of evidence tending to show what the intent of the parties in making the extension of the lease was, that the answer of appellees is important; that the prime significance of the answer is in proof of what is undisputed, viz., that being informed that appellant was informed, believed and claimed that the extension carried the lease only to December 31, 1890, appellees, in the suit brought to enforce such contention, declared that the lease was extended to December 31, 1891; that they, appellees, were entitled to hold the premises until that time, and that appellant was bound by such extension; whereupon appellant yielded to appellees, changed its situation, and abandoned its attempt to get possession of the premises December 31, 1890. It is because such—not mere admission—but unequivocal assertion and claim, was acted upon by appellant, that it insists that

appellees ought not now to be permitted to change their position to their advantage and the detriment of Siegel, Cooper & Co., who relied upon the deliberate assertion of appellees. That admissions, when acted upon by others, are conclusive against the party making them in all cases between him and the party whose conduct he has thus influenced, is elementary. 1 Greenleaf on Evidence, Sec. 207–27 (Thirteenth Edition); Smith v. Newton, 38 Ill. 230, 236; International Bank, 80 Ill. 541, 545; Bradshaw v. Sawyer, 28 Ill. App. 521, 528.

A majority of the court being of the opinion that the construction now placed by appellees upon the lease and extension is the proper one, the judgment of the Circuit Court is affirmed.