DePauw University and Margaret C. Parrett, Appellees, v. United Electric Coal Companies, Appellant.

Gen. No. 9,162.

340

Opinion filed January 24, 1939.

Rehearing denied April 4, 1939.

GUNN, PENWELL, LINDLEY & BURK, of Danville, for appellant.

Jones, Grant & Sebat, of Danville, for appellees.

Mr. Presiding Justice Riess delivered the opinion of the court.

The defendant, United Electric Coal Companies, a corporation, has appealed from an order of the circuit court of Vermilion county overruling its motions to strike certain portions of and to dismiss the complaint of the appellees, DePauw University, a corporation, and Margaret C. Parrett, and from judgment against the defendant in the sum of $2,074.31 and costs entered upon default in failure to answer pursuant to rule and on proofs heard.

The complaint alleged in substance that on January 26, 1927, John H. Harrison and W. J. Parrett, as lessors, entered into a written 10-year lease with the defendant, as lessee of certain premises therein described; that each of the plaintiffs holds a half interest in common in the said lease and property, acquired by them as respective legatees and devisees of said lessors, who have since died testate and whose wills were duly probated; that it was verbally agreed and understood between the parties that the term of the lease should be 10 years from the date of possession; that the rooms were completed and possession taken on December 31, 1927, and monthly rents paid thereunder to September 1, 1937, but that defendant failed and refused to pay rentals for the last four months of the 10-year term ending December 31, 1937, and prays judgment for $2,000 and interest as damages.

The provisions of the written lease, a copy of which was attached, are as follows:

"That the parties, Lessor and Lessee, for and in consideration of One Dollar ($1.00) by each to the other paid, and in further consideration of the mutual undertakings and agreements of the parties hereto,

have agreed, and do hereby agree together, in the manner following, to-wit:

"First: Lessor owns, and hereby leases and lets, to Lessee, the certain 'Rooms' hereinafter designated, in the office building of Lessor, situated at Nos. 139 and 141 North Vermilion Street, Danville, Illinois, known as the 'Adams Building,' and located on Lot Number Six (6), Block Four (4) North, Range One (1) East of the Public Square, in Hezekiah Cunningham's Addition to the City of Danville, Vermilion County, Illinois, To HAVE AND TO HOLD said leased premises to Lessee, for the 'TERM' hereinafter indicated.

"SECOND: Lessee agrees to pay as rental for said premises, the sum of money, hereinafter designated as 'MONTHLY RENTAL,' on the first day of each and every month, during said term."

Clauses numbered third to seventh concern heating, light, water, elevator service, repairs and maintenance of the premises, and relate generally to terms of cancellation and for surrender of the lease without demand "at the expiration of said term."

"EIGHTH: This contract shall extend to, and be binding upon, the parties hereto, and their respective heirs, administrators, and executors.

" 'ROOMS:' All the Fifth Floor, to be built and arranged approximately as shown on blue prints and specifications prepared by Lewis & Dougherty, architects, with option in the Lessee to modify arrangement of rooms and specifications to meet its requirements.

" 'TERM:' Ten (10) years, beginning on the 1st day of September, 1927, or thereabout.

" 'MONTHLY RENTAL:' Five Hundred ($500.00) Dollars per month; rent to start from time possession is taken."

Defendant's motion to dismiss alleged that the complaint was substantially insufficient in law to state a

cause of action; that there can be no recovery under the terms of the written contract attached to and made a part of the complaint; that it has undertaken to extend, by alleged verbal agreements, the 10-year term of the written lease in violation of the statute of frauds, Ill. Rev. Stat. 1937, ch. 59, ¶ 2 [Jones Ill. Stats. Ann. 55.02], and that such verbal terms were merged in the written agreement.

Stripped of its surplusage, conclusions and allegations as to certain verbal statements or agreements referred to and set up in a bill of particulars, and considering only facts well pleaded concerning the written lease in question, and possession and rental payments thereunder, it appears that the complaint concerned a lease to the defendant of the rooms constituting the fifth floor of the Adams building in the city of Danville, to be built and arranged according to blue prints and specifications prepared by architects named therein and to be used for office purposes by the defendant company; that said lessee agreed to pay as monthly rental on the first day of each and every month during the term of the lease a sum of $500, which rent was to start from the time possession was taken; that the term of said lease was fixed at 10 years, during which term the lessee was "to have and to hold said leased premises"; that said lessee entered into possession of said premises after their completion according to the terms specified, on December 31, 1927, and so continued therein and paid such rental of $500 per month for 9 years and 8 months thereafter; that said lease refers to the term as "ten years beginning on the first day of September, 1927, or thereabout" and that on said date the rooms were not completed and ready for occupancy and were not occupied by the defendant until 4 months later.

The plaintiffs contend that the "term" of the written lease, when all provisions and purposes thereof,

as set forth, are considered together, extended from December 31, 1927, to December 31, 1937, and that there was, therefore, remaining due and unpaid such rental of $500 per month for the 4 months of September, October, November and December, 1937.

The defendant contends that under the terms of said lease, the 10-year term began on September 1, 1927, and expired on September 1, 1937, at which time possession of the premises was surrendered by it, and to which date its rentals were paid in full.

The intention of the parties is to be gathered from all the provisions of the contract, when considered together, and to ascertain this intention, regard should be had to the nature of the instrument, the condition of the parties executing it and the object and purposes which they had in view. *Minnesota Lumber Co. v. Whitebreast Coal Co.*, 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529.

A valid term for years may be created to begin *in futuro*. Where the lease does not expressly fix the beginning of the term, the entire contract will be looked to in order to ascertain, if possible, the intention of the parties. The date of the lease does not necessarily affect the beginning of the term, although it may be regarded as the date of the commencement of the term where no other time is indicated by the agreement. A provision in the lease as to the time from which the rent shall run may be indicative of the intention of the parties as to the beginning of the term. 35 C. J. 973, par. 50; *Laskey v. Bew,* 22 Cal. App. 393, 134 Pac. 358.

The duration of a term, as in the case of its commencement, is governed primarily by the provisions of the lease; and when not precisely defined, it may be ascertained by a reference to the covenant as to rent, or to the amount of rent paid thereunder, or other provisions which, when construed together, make the intention and purposes of the parties clear. *Burris v.*

*Jackson,* 44 Ill. 345; *Siegel, Cooper & Co. v. Colby,* 61 Ill. App. 315, aff'd 176 Ill. 210, 52 N. E. 917; *Holmes v. Parker,* 25 Ill. App. 225; 35 C. J. 973, par. 51.

In 16 R. C. L. 607, section 87, it is said: "A leasehold estate, . . . such as a term for years, may be created at common law to commence in futuro, for in such a case a present interest vests, called an interesse termini, though not an interest in possession until the lessee enters into possession. The time between the making of the lease and its commencement in possession is no part of the term granted by it. The term is that period which is granted for the lessee or tenant to occupy and have possession of the premises. It is the estate or interest which he has in the land itself by virtue of the lease from the time it vests in possession." *Young v. Dake,* 5 N. Y. 463, 55 Am. Dec. 356.

Assuming that the plaintiff herein sought to dispossess the tenant before the end of the 10-year period, during which he held possession and was regularly paying his rent, can it be said that the construction contended for by the defendant herein would prevail against him? We think not. Under the terms of this contract, it must be taken as bilateral and not unilateral in its effect.

It is evident that in construing this lease, the date of which was January 26, 1927, the purpose for which it was entered into, the provisions concerning the building and alteration of the rooms according to the fixed plans and specifications set forth therein; that the date "first of September, 1927, or thereabout" is a qualifying phrase apparently used by the parties because the exact date of occupancy could not then be fixed, and the rental was to begin only upon the date of its occupancy for the purposes for which the tenancy was created.

We hold that the meaning of the contract, when all of its terms are so construed together, is that neither

the date it was written nor the date of "the first of September, 1927, or thereabout" are controlling in arriving at the exact time when the term provided for *in futuro* began, but the date of its occupancy for the purposes for which it was altered, when possession was so taken by the tenant, and from which day he began payment of rental at $500 per month made payable monthly during the entire term of the lease, which was fixed at 10 years, can only mean that the written lease began on December 31, 1927, and ended on December 31, 1937.

It has frequently been held that where the purposes or provisions of a lease fixed the beginning of its term at some future time according to some definite event to which reference is made, the happening of this event is controlling and may be shown by the evidence.

We deem paragraph 6 of the complaint, referring to what was verbally agreed as to the time the term began, and all references thereto in the bill of particulars, to be surplusage and subject to the objection that an attempted verbal understanding would be within the statute of frauds, and this paragraph might well have been stricken. However, from the facts well pleaded, a cause of action upon the written contract is stated, and under the rule that all facts material to the issue that are well pleaded are to be taken as admitted for the purpose of the motion to dismiss, it appears that a good cause of action has been stated, and that the circuit court did not err in overruling defendant's motion to dismiss the complaint and in entering judgment in the sum of $2,074.31 upon proof heard, for rental and interest remaining due and unpaid for the last 4 months of the term of the written lease.

Appellant has failed to brief or argue assignment of error for interest allowed, hence we deem said objection to be waived.

Respective counsel have cited numerous authorities concerning the rules applicable to the construction of

contracts in courts of equity as well as cases in which the cause of action was predicated upon oral contracts within the provisions of the statute of frauds. Neither line of decisions have proved materially helpful to the court in the construction of a written contract which was declared upon in a suit at law.

The judgment of the circuit court of Vermilion county will therefore be affirmed.

*Judgment affirmed.*